<u>PRECEDENTIAL</u>

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

————

No. 03-3912

————

DAVID ANGSTADT
and BARBARA ANGSTADT,
Parents and Natural Guardians of
Megan Angstadt, A Minor,
                              <u>Appellants</u>

v.

MIDD-WEST SCHOOL DISTRICT

————

On Appeal from the United States
District Court for the Middle District of
Pennsylvania
(D.C. Civil No. 02-cv-02170)
District Judge: Hon. James F. McClure,
Jr.

————

Submitted Under Third Circuit LAR
34.1(a) July 15, 2004

Before: SLOVITER, BARRY and
WEIS, <u>Circuit</u> <u>Judges</u>

(Filed:  July 29, 2004    )

————

Jeffrey C. Dohrmann
Rieders, Travis, Humphrey, Harris,
Waters & Waffenschmidt
Williamsport, PA 17701

Attorney for Appellants

Michael I. Levin
Paul N. Lalley
Levin Legal Group, P.C.
Huntingdon Valley, PA 19006

Attorneys for Appellee

<u>OPINION OF THE COURT</u>

SLOVITER, <u>Circuit</u> <u>Judge</u>.

Appellants David and Barbara
Angstadt brought suit on behalf of their
daughter, Megan Angstadt, against the
Midd-West School District (the "School
District" or "Midd-West") for civil rights
violations pursuant to 42 U.S.C. § 1983
and the First and Fourteenth Amendments,
and for violations of the Pennsylvania
Public School Code of 1949, 24 Pa. Cons.
Stat. Ann. §§ 1-101, <u>et seq</u>. The District
Court granted the School District's motion
to dismiss[1] and the Angstadts appeal this

————

[1]   The District Court declined to
exercise supplemental jurisdiction over
the state law claims both because it had
dismissed those claims over which it had
original jurisdiction and because the state
law claims were complex.  The court
noted that it had dismissed all federal
claims and, quoting the statute that gives
it discretion to decline to exercise
supplemental jurisdiction over a claim
that "raises a novel or complex issue of
State law," 28 U.S.C. § 1367(c)(1),
concluded that "any question regarding
charter schools in Pennsylvania is a
novel and/or complex issue of State
law."  App. at 19.  It also stated that the
charter school question predominates

decision. We have jurisdiction pursuant to 28 U.S.C. § 1291.

# I.

## FACTS AND PROCEDURAL HISTORY

The Angstadts sued the School District based upon its refusal to permit Megan to participate in interscholastic basketball. Megan is currently seventeen years old and has never been enrolled in the School District, which is her "school district of residence." App. at 6. Instead, she was home schooled from the third grade to the eighth grade. During her seventh and eighth grade years (1999-2000 and 2000-2001), Midd-West allowed Megan to play interscholastic basketball, granting her an exception to its provision disallowing students not enrolled in the School District from participating in its extracurricular activities.

In 2001, she stopped home schooling and began attending Western Pennsylvania Cyber Charter School ("WPCCS") as a ninth-grade student. WPCCS was and is a duly chartered and certified cyber charter school pursuant to the Pennsylvania School Code. The School Code defines "cyber charter school" as "an independent public school established and operated under a charter from the Department of Education and in which the school uses technology in order to provide

_____

over the federal claims. See 28 U.S.C. § 1367(c)(2). It therefore dismissed Count IV of the complaint without prejudice.

a significant portion of its curriculum and to deliver a significant portion of instruction to its students through the Internet or other electronic means." 24 Pa. Cons. Stat. Ann. § 17-1703-A.

Once enrolled at WPCCS, which does not have a basketball team for female students of Megan's grade and age, Megan continued to play interscholastic basketball for Midd-West at the beginning of the 2001-2002 school year. However, the School District "refused to allow [her] to continue to practice, play and compete in interscholastic basketball . . . for the remainder of the 2001-2002 school year and the 2002-2003 school year by claiming that [she] has not met the . . . requirements." App. at 31 (Compl. ¶ 18). The Angstadts contend these requirements are "unreasonable, arbitrary and capricious." App. at 31 (Compl. ¶ 18).

Pursuant to the Pennsylvania School Code, made applicable to cyber charter schools by 24 Pa. Cons. Stat. Ann. § 17-1747-A,

> . . . . no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

2

24 Pa. Cons. Stat. Ann. § 17-1719-A(14) (emphasis added). The Angstadts allege that Megan "has met all charter school, cyber charter school, Pennsylvania Department of Education, and PIAA [Pennsylvania Interscholastic Athletic Association] requirements, <u>and all reasonable requirements</u> placed upon her by [the School District], to practice, play and compete in interscholastic basketball . . . ." App. at 31 (Compl. ¶ 19) (emphasis added). The implication of this statement is that there were requirements Megan did not meet.

The Angstadts filed their initial complaint, along with a request for a temporary restraining order and a preliminary injunction, on January 29, 2002, seeking to compel the School District to permit Megan to participate in interscholastic basketball. The District Court conducted an evidentiary hearing on February 4, 2002 and denied the request for a stay, after which the Angstadts voluntarily dismissed their complaint on the ground that the Pennsylvania legislature amended the Charter School Law to authorize cyber charter schools. They filed their second complaint, initiating the instant action, on November 27, 2002, again seeking a temporary restraining order, a preliminary injunction and other relief to compel the School District to permit Megan's participation in interscholastic basketball competition. This complaint alleged that the School District violated Megan's rights to First Amendment freedom of association, Due Process, and Equal Protection. The

District Court denied the requested temporary restraining order and preliminary injunction.

The School District referenced two letters, entered into the record in the first action, which set forth the requirements imposed on Megan under 25 Pa. Cons. Stat. Ann. § 17-1719-A(14) in order to qualify for extracurricular activities. In their responsive pleadings, the Angstadts contended that the District Court could consider the letters as materials outside the pleadings only after converting the motion to dismiss to a summary judgment motion to afford them an opportunity to submit additional materials under Federal Rule of Civil Procedure 56.

The District Court granted the motion to dismiss, holding that the requirements for participation were not disputed by the Angstadts and were integral to the complaint, and that the Angstadts had failed to state a claim on the First Amendment, Due Process, and Equal Protection grounds pleaded.

## II.

## DISCUSSION

We exercise plenary review of a dismissal order pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.   Motion to Dismiss and Summary Judgment

The Angstadts argue that because "[i]n determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the

3

complaint and its attachments without reference to other parts of the record," Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994), the District Court erred in considering information set forth outside the complaint. However, we have recognized that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

The gravamen of the Angstadts' complaint is that the requirements for participating in extracurricular activities are unreasonable, arbitrary and capricious, but the Angstadts neither enumerate the requirements generally nor specify the requirements to which they object. These requirements were integral to the complaint, as the Angstadts' claim could not be evaluated without some reference to them. In light of the Angstadts' failure to enumerate them for the District Court, the School District sensibly undertook to do so. The Angstadts do not dispute the factual accuracy of the twenty-nine requirements set forth by the School District in the two letters previously referenced, dated October 23, 2001 and November 30, 2001. Instead, the Angstadts contend that the list summarizing these requirements into five general categories, provided by the School

District, was improperly considered by the District Court.

We do not agree that the District Court accepted the School District's characterization of the requirements as falling into five over-simplified and rather benign categories, "without even reviewing the documents on which that representation was based." Appellants' Br. at 21 (emphasis in original). First, there is no basis for the implication that the District Judge, who presided over the action in which the two letter documents were of record, was unfamiliar with the documents on which the summary was based. In fact, many of the requirements are set forth in the relevant statutes. Such requirements include full-time attendance with attendance meaning "a minimum of 180 days of instruction," App. at 46 (quoting 22 Pa. Cons. Stat. Ann. Code 11.1); a day of instruction meaning "time in the school day devoted to instruction provided as an integral part of the school program under the direction of certificated school employees," App. at 46; a curriculum approved by and in conformance with the regulations of the State Board of Education and the Pennsylvania School Code, App. at 49 (quoting PIAA Bylaws, Art. IX, § 1); and "passing at least four full-credit subjects or the equivalent. Eligibility shall be cumulative from the beginning of a grading period, shall be reported on a weekly basis, and shall be filed in the principal's office." App. at 50 (quoting PIAA Bylaws, Art. IX, § 1).

Having put the relevant

requirements at issue, the Angstadts cannot now claim that their own failure to enumerate these requirements creates an issue of fact precluding dismissal. The District Court accepted the School District's summary of the five categories of requirements as:

1. Megan must have achieved at least the 9th grade level academically;

2. Megan's curriculum must be similar to the curriculum, include the physical education course, for the students enrolled in Midd-West;

3. Megan and WPCCS must provide verifiable attendance documentation;

4. Megan and WPCCS must document on-going passing grades;

5. Megan must maintain an average or above citizenship grade.

App. at 45-46 (footnotes omitted).

Because Megan did not receive <u>any</u> internet instruction or attend any "real time" courses, which meant that all of her attendance and class time was self-verified instead of verified by certified instructors, and because she studied a curriculum provided by the University of Missouri and not approved by the State Board of Education, the School District deemed her ineligible to participate in interscholastic

sports. Furthermore, for the reasons that follow, the Angstadts' complaint fails to state a claim upon which relief may be granted, and this failure could not have been cured by additional factual evidence.

B. <u>Freedom of Association</u>

The Angstadts argue that "educational choices of the type and nature at issue in this matter are within the scope of constitutionally protected associations and that [the School District's] actions interfere with or chill those rights as exercised by the [*sic*] Megan and her family." Appellants' Br. at 24. The School District responds that the "Angstadts do not allege that Megan is unable to attend WPCCS as a consequence of the [School] District's requirements . . . ; they have not, in fact, been deprived of the educational alternative of attending a cyber charter school by reason of the [School] District's implementation of its requirements for participation in its extracurricular activities." Appellee's Br. at 18-19. We agree.

To determine whether the School District's refusal to allow Megan to participate in interscholastic basketball violates her right to association, we must identify the precise nature of the associational right in question, the extent to which the state action regulates that right, and thus the appropriate level of scrutiny under which to view that state action.

As the right to education is not constitutionally protected, <u>San Antonio Independent School District v. Rodriguez,</u>

5

411 U.S. 1, 35 (1973), we turn to whether there is a protected intimate, as opposed to expressive, association right at issue. The right of intimate association extends to "child rearing and education." Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987). In Pierce v. Society of the Sisters, 268 U.S. 510, 534-35 (1925), the Supreme Court struck down a state statute that "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control."

That statute, however, made public education compulsory, subject to specific exceptions, thereby directly impacting the right of parents to educate their children in the manner they desired. Here the regulation in question – the requirements placed upon students who wish to participate in interscholastic basketball – does not impact the Angstadts' ability to educate their daughter in the manner they choose.[2] At best, the regulation's impact on the Angstadts' right to rear Megan is attenuated.

Furthermore, state action that incidentally affects the parent-child relationship is subject to minimum scrutiny, requiring only that the action rationally advance a legitimate government interest. See Phila. Police & Fire Ass'n

---

[2]    There is no constitutionally protected right to play sports. Thus the fact that the requirements regulate Megan's ability to play basketball is of no legal consequence.

for Handicapped Children, Inc. v. City of Phila., 874 F.2d 156, 162-63, 168 (3d Cir. 1989). Under the rational basis standard, the Angstadts had the burden of overcoming the presumption of rationality, see Hahn v. United States, 757 F.2d 581, 594 (3d Cir. 1985), and their bare legal conclusion that the requirements that they failed to enumerate are "unreasonable, arbitrary and capricious," App. at 31 (Compl. ¶ 18), is insufficient to rebut the presumption of rationality. Because the burden on the Angstadts' right to educate Megan, to the extent there is a burden, is at best incidental, the District Court did not err in dismissing the complaint as to the right of association claim.

C. Due Process

The Angstadts' due process claim can be summarily dismissed. They concede that "no property interest exists in participation in extracurricular activities, including sports, as a general principle, under the United States Constitution." Appellants' Br. at 29. Even if the state statute were to be viewed as giving Megan a property interest in participating in extracurricular sports, the statute expressly conditions that participation on the proviso "that the student is able to fulfill all of the requirements of participation in such activity." 24 Pa. Cons. Stat. Ann. § 17-1719-A(14). The Angstadts' assertion that Megan has met all "reasonable requirements," suggests that they concede that she has not met all of the "requirements of participation" for interscholastic basketball. It follows that Megan has no property interest for which

due process must be afforded.  Thus, we agree with the District Court that the Angstadts fail to state a due process claim upon which relief may be granted.

D.  Equal Protection

The Angstadts allege that the "unreasonable, arbitrary and capricious requirements to practice, play and compete in interscholastic basketball" deprive Megan "of equal protection of the law based upon [her] status as a cyber charter school student." App. at 36 (Compl. ¶ 41). We apply the highly deferential, rational-basis standard of review because the School District's requirements do not burden any fundamental constitutional right, and the difference between cyber-school students and physical-school students is not a suspect classification, such as those based on race, alienage, or national origin.  Moreover, there is no differing or unequal treatment because the requirements imposed upon cyber-school students are no different than those imposed upon physical-school students. The additional difficulty that cyber-school students may face is insufficient to plead an equal protection violation absent membership in a suspect classification.

In any event, the Angstadts' claim cannot pass the rational-basis threshold. "Under rational-basis review, the challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir. 1993) (quoting FCC v. Beach Communications,

Inc., 508 U.S. 307, 313 (1993)).  The School District put forth five interests animating the list of requirements.  As stated by the District Court, they are:

> (1) ensuring that its student athletes have the academic eligibility to play high school sports; (2) ensuring that its athletes meet its physical education requirements; (3) discouraging students from cutting class or taking unauthorized trips away from school during the school day; (4) encouraging students to maintain passing grades[;] and (5) promoting good citizenship.

App. at 17 (citations omitted).  These reasons provide a rational basis for the requirements for participation in extra-scholastic events by cyber-students as well as physical-school students.[3]

Because the Angstadts fail to allege, as a preliminary matter, that the state action differentially regulates cyber-school students and physical-school students, which is a non-suspect classification, and because the complaint could not defeat rational-basis review, we affirm the decision of the District Court as to the equal protection claim.

___

[3]   Whether they violate the Pennsylvania Public School Code is a matter for the state courts to resolve.

## III.

## CONCLUSION

The District Court did not err when it dismissed the Angstadts' First Amendment, Due Process, and Equal Protection claims under Rule 12(b)(6). We will therefore affirm its order dismissing the action, without prejudice to the Angstadts' right to file their state claims in state court.

—————————————